294 P.3d 119

Delano YANES, an individual, Plaintiff/Appellee,

v.

MARICOPA COUNTY, a political subdivision of the State of Arizona; Joseph Arpaio, in his official capacity as Sheriff of Maricopa County; Officer Adam Hernandez, # A7980, in his individual and official capacities as a detention officer with the Maricopa County Sheriff's Office; John Noble, # A8013, in his individual and official capacities as a detention officer with the Maricopa County Sheriff's Office, Defendants/Appellants.

No. 1 CA–CV 11–0274.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 13, 2012.

As Amended Feb. 19, 2013.

Robbins & Curtin, P.L.L.C. By Joel B. Robbins, Phoenix, Attorneys for Defendants/Appellants.

Jones, Skelton & Hochuli, P.L.C. By Eileen Dennis GilBride, Phoenix, Attorneys for Plaintiff/Appellee.

* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Virginia C. Kelly, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

## OPINION

GOULD, Judge.

¶1 Maricopa County, Sheriff Joe Arpaio, Detention Officer Adam Hernandez, and Detention Officer John Noble (collectively "Defendants") appeal the judgment entered after a jury returned a verdict finding them liable on Appellee Delano Yanes' ("Yanes") 42 U.S.C. § 1983 claim. Because Yanes' § 1983 claim is not actionable under the substantive due process clause of the Fourteenth Amendment, we reverse the judgment to the extent it imposes liability for that claim.[1]

### Facts and Procedural Background [2]

¶2 On September 25, 2003, Yanes was arrested and accused of molesting and murdering his 11–month–old son. While Yanes was being processed into the jail, he was assaulted by Detention Officer Noble. The assault occurred while Noble and Detention Officer Hernandez were escorting Yanes through the jail to pick up supplies. Shortly after Yanes entered the bathroom to get a roll of toilet paper, Noble punched him in the face. Yanes' next recollection was lying on the bathroom floor, bleeding from a cut above his eye.[3] Hernandez, who was standing nearby, observed the assault.

¶3 Yanes argues that Noble's unprovoked attack was a form of "jailhouse justice." When Yanes was admitted into the jail, Noble recognized Yanes from a news story about his son's case. Yanes asserts that based on this news story, Noble believed he was guilty of molesting and murdering his son, and that it was incumbent on Noble to "punish" Yanes for his crime.

¶4 Noble and Hernandez both prepared written reports concerning the incident. In their reports, Noble and Hernandez claimed Yanes had attacked Noble. However, based on the verdict, the jury necessarily disbelieved the detention officers and determined that Noble and Hernandez prepared false reports of the incident.

¶5 Yanes remained in jail for approximately five months. While he was in custody, Yanes' lawyer advised him that he was being charged with aggravated assault based on the reports of the two detention officers. On March 3, 2004, Yanes posted bond on his pending murder/molestation charges and was released from custody. Trial began in the murder/molestation case in January 2005, and on February 3, 2005, Yanes was acquitted of all charges relating to his son.

¶6 Despite Yanes' acquittal on the murder/molestation charges, the aggravated assault charge was still pending. However, on October 10, 2006, the county attorney's office dismissed the aggravated assault charge against Yanes.

¶7 On October 1, 2007, Yanes filed a lawsuit against Noble and Hernandez [4] for malicious prosecution, abuse of process, intentional infliction of emotional distress, and for violating his constitutional rights under 42 U.S.C. § 1983. Yanes also sued Sheriff Arpaio and Maricopa County, alleging both were liable for the detention officers' conduct by endorsing an unconstitutional policy/custom of allowing detention officers to prepare false reports to cover-up abusive conduct against inmates.[5]

---

1. In a separate memorandum decision, we affirm the portion of the judgment awarding $650,000 to Yanes on his tort claim for malicious prosecution but reverse the portion adjudicating defendants liable for intentional infliction of emotional distress and abuse of process.

2. "[W]e view the evidence and all reasonable inferences in the light most favorable to upholding the jury's verdict." *Romero v. Sw. Ambulance*, 211 Ariz. 200, 202, ¶2, 119 P.3d 467, 469 (App.2005).

3. The jail's medical staff sent Yanes to the hospital for some sutures. The record does not reveal any other injuries.

4. Yanes alleged that Hernandez aided and abetted Noble, and therefore was liable for Noble's tortious conduct.

5. . In support of this claim, the jury heard evidence concerning a 2006 assault by Noble on an inmate; saw a videotape of a 1995 detention officer assault on an inmate; saw a television interview regarding the Sheriff's response to the 1995 assault; and heard an expert's testimony regarding the organizational "culture" created by the Sheriff.

¶ 8 At the close of Yanes' case, Defendants made a motion for judgment as a matter of law as to Yanes' § 1983 claim. Ariz. R. Civ. Proc. 50(a). The court denied the motion, and the case was submitted to the jury.

¶ 9 The jury found against Defendants on all counts. It awarded $650,000 in general compensatory damages against all Defendants and $205,000 in punitive damages against Noble. The trial court entered final judgment awarding Yanes his attorneys' fees and costs pursuant to 42 U.S.C. § 1988. The punitive damage award and the attorneys' fee award were based solely on Yanes' § 1983 claim. Defendants subsequently moved for a new trial or to alter or amend the judgment, and renewed their motion for judgment as a matter of law. The trial court denied these motions, and Defendants timely appealed.

### Discussion

¶ 10 Defendants argue they were entitled to judgment as a matter of law on Yanes' § 1983 claim because Yanes failed to identify an actionable constitutional right that was violated by Defendants.[6] We review this question of law de novo. *See League of Ariz. Cities & Towns v. Brewer*, 213 Ariz. 557, 559, ¶ 7, 146 P.3d 58, 60 (2006) (questions of law reviewed de novo); *Acuna v. Kroack*, 212 Ariz. 104, 110 n. 8, ¶ 23, 128 P.3d 221, 227 n. 8 (App.2006) (denial of motion for judgment as a matter of law is reviewed de novo). At the same time, "we 'review the evidence in a light most favorable to upholding the jury verdict' and will affirm 'if any substantial evidence exists permitting reasonable persons to reach such a result.'" *Id.* at 110–111, ¶ 24, 128 P.3d at 227–228

(internal citation omitted). Moreover, we view the evidence and all reasonable inferences from it in a light most favorable to the nonmoving party. *See Warne Invs. Ltd. v. Higgins*, 219 Ariz. 186, 191, ¶ 15, 195 P.3d 645, 650 (App.2008).

¶ 11 Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A plaintiff bringing a § 1983 claim must prove: (1) the deprivation of a specific constitutional right, and (2) the deprivation was actionable. *Albright*, 510 U.S. at 271, 114 S.Ct. 807; *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir.2001); *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir.2007).

¶ 12 The sole basis for Yanes' § 1983 claim[7] is his assertion that by falsely accusing him of aggravated assault the Defendants deprived him of his substantive due process right under the Fourteenth Amendment to be free from prosecution without probable cause.[8] Yanes asserts that Defendants' due process violation is based on the "constitutional tort of malicious prosecution." In defining the contours of this due process violation, Yanes relies almost exclusively on the elements necessary to prove a state tort claim for malicious prosecution.

¶ 13 Yanes' "constitutional tort of malicious prosecution" is, at its core, based on

---

**6.** Yanes argues that Defendants waived their arguments regarding his § 1983 claim because they submitted proposed jury instructions regarding this claim. We disagree. Defendants raised their objections to Yanes' § 1983 claim in their pretrial motion for summary judgment and in their motion for judgment as a matter of law at the close of Yanes' case. Accordingly, Defendants did not "effectively invite error" by submitting a jury instruction that invited the jury to find consequential damages, "knowing that it would be erroneous for the jury to do so," and not having previously raised the issue. *Walter v. Simmons*, 169 Ariz. 229, 235, 818 P.2d 214, 220 (App.1991).

**7.** Yanes has not based his § 1983 claim on Noble's alleged use of excessive force, Yanes' arrest or prosecution for the murder/molestation of his son, or any alleged violations of the Fourth Amendment or his due process right to a fair trial guaranteed by the Fourteenth Amendment.

**8.** Yanes limits his arguments on appeal to substantive due process. He does not argue that procedural due process applies to his § 1983 claim.

the State's filing of charges against him without probable cause. The "[i]nitiation of charges without probable cause lies at the heart" of a § 1983 claim based on malicious prosecution. *Castellano v. Fragozo,* 352 F.3d 939, 945 (5th Cir.2003); *see also Bearup v. Bearup,* 122 Ariz. 509, 510, 596 P.2d 35, 36 (App.1979) (stating that "a prosecutor or complaining witness acting without probable cause" is an essential element of a malicious prosecution claim). Yanes asserts he was deprived of his due process rights because the false reports of the detention officers did not constitute probable cause and, absent the reports, there was no probable cause upon which to file the aggravated assault charge. *See Pierce v. Gilchrist,* 359 F.3d 1279, 1293 (10th Cir.2004) ("[I]n case of a Fourth Amendment claim of falsified evidence, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the [search warrant] affidavit").

¶ 14 Thus, the issue in this case is whether Yanes' alleged due process right to be free from prosecution without probable cause constitutes a valid, actionable basis for his § 1983 claim. Based on *Albright* and the majority of federal court decisions interpreting *Albright,* we conclude as a matter of law that Yanes' § 1983 substantive due process claim was not actionable.

## I. § 1983 Malicious Prosecution Based Upon Substantive Due Process

¶ 15 Few areas of the law have been more confusing than § 1983 claims based on malicious prosecution. Before the United States Supreme Court in *Albright* attempted to reconcile differing and often conflicting federal decisions in this area, some courts grounded such claims on the Fourth Amendment, while others based them on the Fourteenth Amendment.[9] Courts also disagreed whether proof of the common law elements of a

state law malicious prosecution claim was sufficient to prove a § 1983 claim.[10]

¶ 16 The Supreme Court's 1994 decision in *Albright* did not resolve all these differences, but it did clarify the law on a few important issues. In that case, Albright was charged with selling illegal drugs and a warrant was issued for his arrest. The evidence supporting the charge was questionable. The police relied upon the uncorroborated testimony of an informant who had proved unreliable on more than 50 occasions. In truth, prosecutors had never successfully prosecuted anyone she had implicated in a drug crime. *Albright,* 510 U.S. at 293–94, 114 S.Ct. 807 (Stevens, J., dissenting). In Albright's case, the informant misidentified the substance allegedly sold to her as cocaine, when in fact it was baking soda. *Id.* at 293–94, 114 S.Ct. 807. In addition, the informant eventually admitted that she may have misidentified Albright as the person who sold her the "illegal" drugs. *Id.* Commenting later on the grounds for the arrest, the Seventh Circuit observed: "To arrest a person on the scanty grounds that are alleged ... is shocking." *Albright v. Oliver,* 975 F.2d 343, 345 (7th Cir.1992).

¶ 17 Albright turned himself in to Illinois authorities after learning that a warrant had been issued for his arrest. *Albright,* 510 U.S. at 268, 114 S.Ct. 807. When the charges against him were later dropped because they did not state a claim under Illinois law, Albright sued, arguing a violation of his "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Id.*

¶ 18 In a plurality opinion, the Supreme Court held that Albright's § 1983 claim based on substantive due process was not actionable. 510 U.S. at 268, 275, 114 S.Ct. 807. The Supreme Court stated that for § 1983 claims based on malicious prosecution, "substantive due process may not fur-

**9.** *See* Jaques L. Schillaci, *Unexamined Premises: Toward Doctrinal Purity in § 1983 Malicious Prosecution Doctrine,* 97 Nw. U.L.Rev. 439 (2002) (discussing the diverse approaches of the federal courts prior to *Albright*); Colleen R. Courtade, Annotation, *Actionability of Malicious Prosecution Under 42 U.S.C.A. § 1983,* 79 A.L.R.

Fed. 896 (1986 & 2012 Supp.) (discussing various approaches of federal circuit courts prior to and after *Albright* ).

**10.** *See supra* n. 9.

nish the constitutional peg on which to hang such a 'tort.'" 510 U.S. at 271 n. 4, 114 S.Ct. 807. The Court reasoned that rather than expand the "scarce and open-ended" guideposts of substantive due process to protect persons against unwarranted prosecutions, the Court would look to the Fourth Amendment for a more "explicit source of textual protection" that goes "hand in hand" with the pretrial deprivations of liberty encountered when a prosecution is initiated without probable cause. 510 U.S. at 271–72, 274–75, 114 S.Ct. 807 (internal citations omitted).

¶ 19 Although federal courts have struggled with interpreting certain aspects of *Albright*, the majority of courts agree that based on *Albright*, substantive due process does not provide a valid basis to bring a § 1983 claim based on malicious prosecution.[11] Moreover, most courts have followed *Albright*'s direction that the Fourth Amendment's proscription against "unreasonable seizures" protects against deprivations of liberty stemming from charges filed without probable cause. *Nieves*, 241 F.3d at 54; *Becker*, 494 F.3d at 919; *see also Cuadra*, 626 F.3d at 814 ("[t]he *Albright* Court held

that plaintiff's claims based on prosecution without probable cause were best analyzed under the Fourth Amendment"); *Gallo v. City of Philadelphia*, 161 F.3d 217, 221–22 (3rd Cir.1998) (same); *Pleasants v. Town of Louisa*, 847 F.Supp.2d 864, 882 (W.D.Va. 2012) (same).[12]

¶ 20 Several cases cited by Yanes as supporting a due process basis for his § 1983 claim are distinguishable, primarily because they concern a defendant's due process right to a fair trial. For example, Yanes cites *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir.2004), for the proposition that "deliberately fabricating evidence and framing individuals for crimes they did not commit ... necessarily violate[s] due process." However, this statement in *Limone* refers to using false evidence at trial to obtain a criminal conviction; it does not address the *pretrial* constitutional deprivation of liberty attendant with filing criminal charges lacking probable cause. *Limone*, 372 F.3d at 45–46 ("[t]he Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.") Similarly, Yanes cites *Ricciuti v. N.Y.C. Transit Au-*

11. *See Castellano*, 352 F.3d at 953 ("*Albright* rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process"); *Nieves*, 241 F.3d at 53–54 ("a plurality of the Supreme Court has concluded that 'substantive due process may not furnish the constitutional peg on which to hang' a federal malicious prosecution tort ... [W]e have followed the Court's lead in this respect") (internal citations omitted); *Becker*, 494 F.3d at 918–19 ("[W]e think the unavoidable construction of *Albright* is that no § 1983 claim will arise from the filing of criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment"); *Cuadra v. Houston Ind. School Dist.*, 626 F.3d 808, 814 (5th Cir.2010) (stating plaintiff's "Fourteenth Amendment substantive due process claim" based upon prosecution without probable cause was "foreclosed by the Supreme Court's decision in *Albright*"); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir.2004) ("[T]he principle that *Albright* establishes is that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause"); *Lawrence v. City of St. Paul*, 740 F.Supp.2d 1026, 1040 (D.Minn.2010)(same).

*But see Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir.2001). In *Devereaux*, the court stated, "there is a clearly established due process

right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Significantly, *Devereaux* does not cite or discuss *Albright*, nor does it provide any analysis of the issue before this court: whether substantive due process provides a valid basis for bringing a § 1983 claim based on malicious prosecution.

12. *But see Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir.2002). In *Moran*, the court did not follow the direction of *Albright*, stating that plaintiff's § 1983 claim based on malicious prosecution did not "neatly fit" within the Fourth Amendment, but rather was more properly based on substantive due process. The court distinguished *Albright* on the ground that unlike the reckless behavior of the police in *Albright*, "law enforcement's intentional creation of damaging facts" to set up an innocent accused was an abuse of official power that "shocked the conscience," and therefore implicated substantive due process. *Moran*, 296 F.3d at 647. The dissent criticized the majority's holding, stating it was "contrary to controlling Supreme Court precedent" set forth in *Albright*, where "no fewer than seven justices agreed, though on different grounds, that a substantive due process claim will not lie for 'prosecution without probable cause.'" *Moran*, 296 F.3d at 653 (Loken, J., dissenting).

*thority,* 124 F.3d 123 (2nd Cir.1997), which also involves a defendant's due process right to a fair trial. *Ricciuti,* 124 F.3d at 130 ("[W]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable ... under 42 U.S.C. § 1983."). *See also Pierce,* 359 F.3d at 1285–86 (stating that plaintiff's § 1983 claim based on malicious prosecution was governed by the Fourth Amendment, "but at some point after arrest, and certainly by the time of trial, the constitutional analysis shifts to the Due Process Clause.").[13]

¶ 21 We do not hold that the Fourteenth Amendment may never serve as the basis for a § 1983 claim arising from the filing of baseless charges. *Albright* does not mandate such a result.[14] The Supreme Court's analysis of Albright's claim was limited to the facts involved—the arrest and filing of charges against Albright without probable cause. We recognize that different factual situations could give rise to a viable § 1983 claim based on substantive due process. *See Albright,* 510 U.S. at 291, 114 S.Ct. 807 (Souter, J., concurring) ("[T]here may indeed be exceptional cases where some quantum of harm occurs in the interim period after groundless criminal charges are filed but before any Fourth Amendment seizure."). However, *Albright* is dispositive as to Yanes' claim, which indisputably involves the injury he suffered as a result of the State filing criminal charges against him absent probable cause.[15]

¶ 22 We do not reach the issue whether Yanes may have brought a viable § 1983 claim based on the Fourth Amendment. The record reflects certain pretrial limitations on Yanes' liberty, such as disciplinary segregation[16] and pretrial release conditions,[17] that may or may not have supported a viable claim under the Fourth Amendment. *See Castellano,* 352 F.3d at 947 ("Justice Ginsburg's separate opinion [in *Albright*] explained that the Fourth Amendment prohibition on unreasonable seizures could extend to post-arraignment travel restrictions") (citing *Albright,* 510 U.S. 266, 277–81, 114 S.Ct. 807 (Ginsburg, J., concurring)); *Murphy v. Lynn,* 118 F.3d 938, 946 (2nd Cir.1997) (pretrial release conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment); *Gallo,* 161 F.3d at 224 (same). However, the jury was never instructed on any Fourth Amendment theory or claim, including an essential element of any potential Fourth Amendment claim: the violation of Yanes' right to be free from unreasonable seizure.[18] As a result, we do

13. Yanes' citation to *Jones v. City of Chicago,* 856 F.2d 985 (7th Cir.1988) is also not relevant to our analysis since it was decided in 1988, six years before *Albright.*

14. *See, e.g., Awabdy,* 368 F.3d at 1070 (holding that *Albright* did not bar plaintiff's claim that a county, by filing baseless charges against plaintiff "because of racial animus against Arab Americans," violated plaintiff's Fourteenth Amendment right to equal protection).

15. Yanes suggests on appeal that his § 1983 claim may have been premised on the First Amendment. However, Yanes never pled a First Amendment claim, never raised such a claim in the joint pretrial statement, and the jury was never instructed on a First Amendment claim.

16. For example, in his report Noble recommended that, because of the alleged assault, Yanes receive 30 days of disciplinary segregation and 30 days of full restriction. The parties dispute whether Yanes was subsequently transferred to "disciplinary segregation" based on Noble's report, or whether Yanes was placed into "ad-

ministrative segregation" for his own protection due to his high profile status.

17. It is unclear from the record whether the bond posted as to the murder/molestation charges also applied to the aggravated assault charge. Yanes was restricted from leaving the "24/7" supervision of his grandfather while he was out on bail on the murder/molestation charges. However, it is not clear whether any such restrictions applied to the aggravated assault charge once Yanes was acquitted of the murder/molestation charges. The record does show that Yanes' bond was not exonerated until the aggravated assault charges were dismissed.

18. Defendants argue they are entitled to qualified immunity because it was not "clearly established" their behavior would violate substantive due process. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, we do not address this issue because Yanes has failed to establish an actionable constitutional violation. Likewise, given that we have determined Yanes' § 1983 claim was not action-

not analyze whether Yanes' § 1983 claim was actionable under the Fourth Amendment.

## II. Punitive Damages

¶ 23 Punitive damages are not available against public entities or employees under Arizona law. Ariz.Rev.Stat. § 12–820.04. Therefore, the only basis for the jury's award of punitive damages against Noble was Yanes' federal § 1983 claim. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Because we have determined that Yanes did not allege a viable § 1983 claim, we reverse the award of punitive damages.

## III. Attorneys' Fees

¶ 24 Yanes was awarded attorneys' fees pursuant to 42 U.S.C. § 1988. Because an award of attorneys' fees under this statute requires proof of a civil rights violation pursuant to 42 U.S.C. § 1983, we reverse Yanes' attorneys' fee award.

### *Conclusion*

¶ 25 For the foregoing reasons, we reverse the judgment to the extent it awards punitive damages and attorneys' fees based on Yanes' § 1983 claim. We also reverse to the extent the judgment adjudicates Sheriff Arpaio and Maricopa County liable for any damages. For the reasons set forth in the memorandum decision filed with this opinion, we reverse the judgment to the extent it finds Defendants Noble and Hernandez liable for intentional infliction of emotional distress and abuse of process, but we affirm the remainder of the judgment finding them liable for malicious prosecution. Finally, we remand to the trial court with instructions to amend the judgment in accordance with our decisions.

CONCURRING: MAURICE PORTLEY, Presiding Judge and ANN A. SCOTT TIMMER, Judge.

able, there is no constitutional violation upon which to base Yanes' claims against Sheriff Arpaio and Maricopa County. *Monell v. New York*

*City Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).